### Linda L. MAKINSON, Plaintiff,

v.

### Michael J. ASTRUE, Commissioner of Social Security, Defendant.

### C.A. No. 9:06–3341–PMD.

United States District Court, D. South Carolina, Beaufort Division.

April 16, 2008.

Beatrice E. Whitten, Beatrice E. Whitten Law Office, Mt. Pleasant, SC, for Plaintiff.

Beth Drake, U.S. Attorneys Office, Columbia, SC, for Defendant.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon Plaintiff's motion for an award of attorney fees and costs in the amount of $2,587.95 to be paid directly and solely to counsel, under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Defendant contests the awarding of such fees, claiming that the Government's position in this case was substantially justified. For the foregoing reasons, Plaintiff's motion is granted.

### BACKGROUND

Plaintiff alleges disability as of January 15, 2002, when she was forty-one years old, due to depression and anxiety. Before the onset of these mental health conditions, Plaintiff had worked for a heating and air conditioning company, as a bartender, and as a veterinary assistant.

In October 2000, Plaintiff was involuntarily admitted to a psychiatric hospital after she severely cut her own wrists after a fight with her boyfriend. However, Plaintiff denied that she had intended to kill herself. Psychiatrists discovered that Plaintiff had a history of alcohol abuse, financial problems, and problems with her five children. Plaintiff was discharged after five days in the facility, but psychiatrists recommended that she attend AA meetings and make and attend follow-up appointments with mental health professionals.

In November 2000, Plaintiff was prescribed an antidepressant by a psychiatrist to help her manage her depression. However, upon a follow up visit to a psychiatrist (after missing several scheduled follow-up appointments), Plaintiff revealed that she had stopped taking the antidepressant and was still drinking. After missing several more appointments, Plaintiff asked a psychiatrist to fill out a disability form, but he refused to do so unless she began attending her appointments, taking her prescriptions, and actively seeking treatment. The psychiatrist switched her prescription and referred her to the

Berkeley County Mental Health Center for further therapy.

Throughout 2001 and 2002, Plaintiff continued to seek psychiatric treatment for her depression symptoms, and continued to take the prescribed antidepressants. In May 2003, Berkeley County Mental Health Center discharged her because she had not returned for treatment. Plaintiff filed for disability benefits in August 2003, claiming that she had been disabled because of her depression since January 2002. Throughout 2003 and 2004, Plaintiff continued to visit with psychiatrists and take various types of prescription antidepressants. In October 2004, Plaintiff consumed 10–20 beers and 20 tablets of Paxil, and was taken by ambulance to the emergency room. However, she denied that she had done this in order to kill herself.

Plaintiff's initial claim for disability benefits was denied. Upon request, Plaintiff was given a hearing before Administrative Law Judge Debra Moriss ("the ALJ") on September 8, 2005. After listening to testimony from Plaintiff and several of Plaintiff's family members, and reviewing the record, the ALJ determined that Plaintiff was not completely disabled, and could still perform certain types of heavy labor. The Appeals Council denied Plaintiff's appeal of the ALJ's decision, making the ALJ's decision the final determination of the Commissioner.

On November 27, 2006, Plaintiff brought this action against the Commissioner. This matter was referred to United States Magistrate Judge George C. Kosko, who issued a Report & Recommendation ("R & R") to this court on November 16, 2007. The R & R noted several procedural errors with the ALJ's finding, and recommended that the court vacate the decision and remand the case back to the ALJ for further proceedings. On December 13, 2007, after the Government filed no objections to the R & R, this court adopted in full the R & R, and the matter was vacated and remanded to the ALJ.

On February 6, 2008, Plaintiff filed her motion for attorney's fees under the EAJA. The government responded in opposition on February 25. Plaintiff replied on February 27.

## STANDARD OF REVIEW

■ A party who prevails in litigation against the United States is entitled to EAJA attorney fees, as well as the costs and expenses of litigation, upon timely petition for them if the government's position was not "substantially justified" and no special circumstances make an award unjust. *Crawford v. Sullivan,* 935 F.2d 655, 656 (4th Cir.1991). This case turns entirely on the "substantial justification" question.

■ The government bears the burden of proving that its position was substantially justified, thus precluding an award of attorney fees and costs under the Equal Access to Justice Act. In order to meet its burden of showing that its position before the District Court was "substantially justified," the government has the burden of establishing that its case has a reasonable basis in law and in fact—that is, justified to a degree that could satisfy a reasonable person or justified in substance or in the main. *Thompson v. Sullivan,* 980 F.2d 280 (4th Cir.1992) (holding that the government's position must be substantially justified in both fact and law; favorable facts will not rescue the government from a substantially unjustified position on the law, and accurate recital of law cannot excuse a substantially unjustified position on the facts).

■ To be substantially justified means, of course, more than merely undeserving of sanctions for frivolousness. *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541,

101 L.Ed.2d 490 (1988). However, a position can be justified even though it is not correct and can be substantially (that is, for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact. *Id.*

The government's burden of showing substantial justification is a strong one and is not met merely because the government produces "some evidence" in support of its position. *Petrella v. Sec. of Health and Human Services*, 654 F.Supp. 174 (M.D.Pa.1987). The government's position must be evaluated in light of the standards in existence when the decision was rendered. *Id.* Where the government's position was a result of its failure to perform a certain analysis required by the law and its regulations, it was not substantially justified. *Randolph v. Sullivan*, 738 F.Supp. 305, 306 (C.D.Ill.1990). The test of reasonableness represents a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous. *Sierra Club v. Sec. of Army*, 820 F.2d 513 (1st Cir.1987).

### *ANALYSIS*

The first requirement of *Thompson v. Sullivan* is that the Government's position be substantially justified on the facts. As an initial matter, this court points out that its previous order did not constitute a finding that the ALJ's ruling that Plaintiff was not disabled was incorrect. Instead, the order was based on the fact that the ALJ, at least in the written opinion on the matter, committed several procedural errors in determining that Plaintiff was not disabled.

There were inconsistencies in Plaintiff's evidence about when her depression began and the severity of her depression. Throughout the time period in question, Plaintiff repeatedly missed scheduled treatment appointments, stopped taking medication prescribed for her depression, and engaged in binge drinking behavior in direct violation of the recommendations of her physicians. Furthermore, there was contrary evidence in the form of several treating psychiatrists who, while acknowledging that Plaintiff suffered from depression and alcoholism, did not believe this to be completely disabling. Therefore, there was evidence in the record that could have led a reasonable person to believe that Plaintiff was not, in fact, completely disabled. Accordingly, the ALJ's decision was substantially justified in fact.

The second requirement of *Thompson v. Sullivan* is that the Government's position be substantially justified on the law. In its previous order, this court found against the Government, and remanded this case back to the ALJ for a new decision on Plaintiff's disability status in accordance with legal requirements. However, this does not automatically mean that the Government's position was not substantially justified—if it did, payment of attorney's fees under the EAJA would be an automatic consequence of even the most minute of technical errors on the part of the ALJ. If the government's actions taken as a whole are reasonable, even if one specific act of the government may not have been substantially justified, then the award of attorney's fees is improper under the EAJA. *See Madrid v. Astrue*, 243 Fed. Appx. 387, 392 (10th Cir.2007).

However, the position of the government was not substantially justified legally in the present case. The ALJ made two substantial errors in her consideration of the Plaintiff's case, as noted in the Magistrate Judge's R & R, to which the Government filed no objection and this court adopted in full.

First, the court held that the ALJ's credibility analysis was insufficient such

that it violated SSR 96–7p, which states that:

It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96–7p. In her decision, the ALJ wrote:

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments [manic depression, anxiety, and a history of substance abuse] could have been reasonably expected to produce the alleged symptoms, but that the testimony at the hearing concerning the intensity, duration and limiting effects of the claimant's symptoms is not entirely credible.

Clearly, then, the ALJ's opinion did not comport with the requirements of SSR 96–7p. The ALJ's reasoning is a statement to the effect of "the allegations are not credible," which 96–7p explicitly notes is insufficient. Accordingly, the court vacated and remanded the matter to the ALJ for further proceedings, specifically requiring the ALJ to explain why she did not view the testimony of Plaintiff and her family members as sufficiently credible to establish a claim for total disability. This court has previously held that an ALJ's failure to comport with the basic requirements of SSR 96–7p means that the government's actions are not substantially justified by

law, *Adams v. Barnhart*, 445 F.Supp.2d 593, 596 (D.S.C.2006), and the Government has given the court no reason why these circumstances are distinguishable.

Secondly, the court held that the ALJ was in error in not soliciting the testimony of a vocational expert at stage five of the five-step evaluation process. Plaintiff satisfied stage four, which establishes a *prima facie* case for disability. After this, the burden shifts to the Government to establish that there are occupations in the national economy that the claimant can perform. The ALJ determined that Plaintiff could perform heavy work, which is defined as:

Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. § 404.1567(d). However, the only evidence in the record which would support such a finding was that Plaintiff's past occupations had involved the lifting of moderately heaving objects, but always with the help of someone else. There was no evidence that she had ever been required or able to lift these weights on her own.

Furthermore, the ALJ determined that Plaintiff was not disabled by applying "the Grid rule." However, where the disability claim is based on a "non-exertional" impairment, like the Plaintiff's depression in the present case, the ALJ is to determine "whether a given nonexertional condition affects an individual's residual functional capacity to perform work of which [s]he is exertionally capable. If the condition has that effect, it is properly viewed as a 'non-exertional impairment,' thereby precluding reliance on the grids to determine a claimant's disability." *Smith v. Schweiker*, 719

F.2d 723, 725 (4th Cir.1984). Here, Plaintiff may have been exertionally capable, but her claim of impairment was clearly due to her depression, which impacted her overall ability to function in any occupation.

■■■ Where the disability is of the nonexertional variety, an ALJ is required to consult with a vocational expert ("VE") to determine if the person's disability prevents them from performing certain kinds of work. *See Hooper v. Heckler,* 752 F.2d 83, 88 (4th Cir.1985) ("Because the grids do not automatically apply when a nonexertional impairment exists, the testimony of a VE is normally required."). *See also McLain v. Schweiker,* 715 F.2d 866, 870 n. 1 (4th Cir.1983) ("Because McLain has demonstrated the existence of a nonexertional impairment, resort to the medical-vocational guidelines would be inappropriate and the presence of a vocational expert will be required for the Secretary to establish McLain's alternate vocational capacity."). Accordingly, the court held that here, since Plaintiff's claimed disability was quite clearly nonexertional, the ALJ had erred in not consulting with a VE, and in applying the Grid system in determining that Plaintiff was capable of performing heavy work.

This was a clear error of law by the ALJ. The law and precedent regarding when reliance on the grid system is proper, and when an ALJ must instead rely upon the testimony of a VE, is clear. The government did not contest this court's finding that the ALJ was in error, and has produced no reason why the ALJ was not erroneous in her reliance upon the grid system in determining that Plaintiff was capable of performing heavy work.

Ultimately, as explained above, the ALJ's report failed to contain certain analyses as required by law. Because a substantially justified position must have a reasonable basis in both law *and* fact, the court simply cannot find the government's position substantially justified in light of the government's blatant and undeniable failure to comply with certain applicable Social Security Rulings and Regulations.

With regard to the actual calculation of Plaintiff's fee award, Plaintiff's counsel has requested fees at the statutory rate of $125 an hour, plus a cost of living increase consistent with the South Urban Regional Consumer Price Index, for an adjusted rate of $159.75 an hour.[1] Plaintiff's counsel has itemized the 16.2 hours of total time spent researching and writing both the Memorandum of Law and the Reply Brief. Defendant concedes that $159.75 is the appropriate hourly rate under the 2007 cost of living calculations. In Defendant's Response to Plaintiff's Motion, Defendant writes that "[i]f the Court finds the Defendant's position was not substantially justified in this case, the Commissioner will not object to an award of $2,380.27 for attorneys fees under the EAJA." (Def.'s Response at 1.) However, no explanation is given for the difference between this figure and the $2,587.97 figure requested by Plaintiff, and no claim is made anywhere in Defendant's Response that Plaintiff's claimed amount is in any way unreasonable under the circumstances. Accordingly, the court finds that Plaintiff's requested

---

1. Under the EAJA, "attorney fees may not exceed $125.00 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The Fourth Circuit has held that a general cost of living index, such as the United States Department of Labor's Consumer Price Index for all the urban consumers "all items" index ("CPI–U index"), is the appropriate measure by which to calculate a cost of living enhancement to a statutory fee. *Sullivan v. Sullivan,* 958 F.2d 574 (4th Cir.1992).

amount is reasonable and represents a correct calculation of the amount due under the law.

### CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Attorney's Fees in the amount of $2,587.97 under the EAJA is **GRANTED.**

**AND IT IS SO ORDERED.**